IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal Case **3:17-CR-155-L** |
| | § | |
| JAMSHID NORYIAN (01) | § | |
| DEHSHID NOURIAN (02) | § | |
| CHRISTOPHER RYDBERG (03) | § | |
| MICHAEL TABA (07) | § | |

**ORDER**

On August 18, 2023, the court entered a short order denying Defendant Taba's Motions for Leave (Docs. 557, 558), filed on August 14, 2023, and Defendant Taba's Motion for Leave (Doc. 583), filed on August 18, 2023. *See* Doc. 584.[1] The court explained that it would enter another order setting forth its reasons in more detail for denying these Motions for Leave before the September 7, 2023 pretrial conference. These reasons, in addition to those included in the court's August 18, 2023 order, are detailed below.

**I.    Motion for Leave to File Motion to Release Grand Jury Transcripts or, in the Alternative, Motion for an In Camera Review (Doc. 558)**

Defendant Taba seeks leave to file his proposed motion for an order releasing the grand jury transcripts to him, or, alternatively, for the court to conduct an *in camera* review of the transcripts of the grand jury that returned an indictment against him and several others on September 11, 2019. He contends that, although the motion deadline in this case expired more than two years ago on January 3, 2020, he can satisfy the requirements in the court's Amended Scheduling Order (Doc. 540) for seeking leave, that is: (1) showing good cause; and (2)

---

[1] In the first sentence of the August 18, 2023 order, the court mistakenly referred to Document No. 558 as Document No. 556.

**Order – Page 1**

demonstrating that the need to file a motion, the basis for which could not have reasonably discovered with the exercise of due diligence. He acknowledges that "[g]ood cause requires both a finding of cause and prejudice." Def.'s Mot. for Leave 1 (citing *United States v. Dennis*, 41 F.4th 732, 739-40 (5th Cir. 2022)).

According to Defendant Taba, good cause exists here to file his proposed motion because the motion could not have been filed before the first trial for the following three reasons: (1) the charges against former Defendants Leyla Nourian and Ashraf Mofid were not dismissed until one week before the first trial in October 2022; (2) there was a fee agreement dispute between Defendant Taba and his prior counsel that delayed communications and trial preparations for the first few months of 2023 and resulted in his prior counsel withdrawing from the case; and (3) Defendant Taba retained new counsel at the end of May 2023, who had to obtain all discovery from the Government that was not in the possession of his prior counsel, and his current counsel did not receive that discovery until the first week of July. Def.'s Mot. for Leave 1-2.

Defendant Taba further asserts that, because of the voluminous discovery in this case, his current counsel could not have sought the grand jury transcripts any sooner despite their due diligence in thoroughly reviewing the materials. In addition, he contends that it was his current counsel's review of the discovery materials that led them to discover that "all the alleged kickbacks claimed by the government were checks stemming from bank accounts owned and operated by either Leyla Nourian or Ashraf Mofid," and there are "no financial documents linking" him to the other named Codefendants in the Superseding Indictment. *Id.* at 2.

In the past month, Defendant Taba has filed several motions seeking continuances of pretrial deadlines and previously expired motion deadlines on the ground that he retained new counsel in May 2023 because of a fee dispute with his last attorney. As the court has explained in

Order – Page 2

the orders denying Defendant Taba's prior motions, his decision to retain new counsel *again* approximately three months before the next trial setting is a matter that was entirely within his control, and repeatedly retaining new counsel is not a valid excuse for continuing existing deadlines or resurrecting long-expired deadlines set by the court.

Defendant Taba has also not explained what specific information he seeks or expects to obtain from the grand jury transcripts, the import of any such information, the prejudice he would suffer if not permitted to obtain such information, or why his last attorney could not have sought leave to obtain the grand jury transcripts immediately after the charges against former Defendants Leyla Nourian and Ashraf Mofid were dismissed in October 2022. The court recalls from the pretrial conference before the first trial that Defendant Taba's former counsel expressed the strongly held belief that the Government's decision to dismiss the charges against these Defendants, and the timing of that decision, undermined the charges against his client and exposed shortfalls in the Government's investigation. Thus, Defendant Taba's last attorney was acutely aware of this issue. The court, therefore, disagrees that Defendant Taba has shown good cause or prejudice. Even if leave were granted, Defendant Taba would still not be entitled to obtain the grand jury transcripts because his proposed motion does not satisfy each of the requirements for disclosure of grand jury transcripts.

Under federal law, "a general rule of secrecy shrouds the proceedings of grand juries." *Shields v. Twiss*, 389 F.3d 142, 147-48 (5th Cir. 2004) (citing *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 218-19 (1979)). This is because "[t]he proper functioning of the grand jury system depends upon the secrecy of the grand jury proceedings." *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993) (citing *Douglas Oil*, 441 U.S. at 224-225).

Federal Rule of Criminal Procedure 6(e), nevertheless, provides exceptions to this general rule of secrecy. *See Miramontez*, 995 F.2d at 59. In this regard, Rule 6(e) states:

> The court may authorize disclosure —at a time, in a manner, and subject to any other conditions that it directs —of a grand-jury matter: . . . (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]

Fed. R. Crim. P. 6(e)(3)(E)(ii).

As the party seeking disclosure of grand jury transcripts, Defendant Taba has the burden "to show that 'a particularized need' exists for the materials that outweighs the policy of secrecy." *Miramontez*, 995 F.2d at 59 (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959)). To meet this burden, Defendant Taba must demonstrate that: "(1) the material he seeks is needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) his request is structured to cover only material so needed." *Miramontez*, 995 F.2d at 59 (citing *Douglas Oil*, 441 U.S. at 221-22).

Defendant Taba contends that, because the charges against former Defendants Leyla Nourian and Ashraf Mofid were dismissed, "it is highly *likely* that grounds *may* exist to dismiss the Superseding Indictment or, at a bare minimum, count one of the Superseding Indictment" that sets forth the conspiracy charge against him." Def.'s Proposed Mot. for Release of Grand Jury Transcripts 2 (Doc. 558-2) (emphasis added). Defendant Taba argues that disclosure of the grand jury transcripts is also justified for another reason—because he can establish the following three requirements for a violation of *Brady v. Maryland*, 373 U.S. 83 (1963):[2] "(1) the evidence is

---

[2] The Supreme Court in *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

**Order – Page 4**

favorable to the accused because it is exculpatory or impeachment evidence; (2) the government suppressed the evidence; and (3) prejudice resulted from the nondisclosure." Def.'s Proposed Mot. for Release of Grand Jury Transcripts 2-3 (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Defendant Taba asserts that the *Strickler* components or requirements for a *Brady* violation are satisfied here because:

> For the first prong, the government must have produced evidence to the grand jury tying the two discharged defendants to [him] in order to obtain the Superseding Indictment. (*See* Doc. 162, ¶ 39.) Paragraph 39 of the Superseding Indictment clearly spells out that Leyla Nourian recruited [him] into the conspiracy. However, since Leyla has been discharged from the conspiracy, at a bare minimum, [he] is entitled to know what ties him to the conspiracy at this point. The evidence that the government produced to the grand jury is now deemed to be favorable, exculpatory evidence for [him]. It is clear that since the grand jury returned an indictment for the two discharged defendants, the grand jury had to have been misinformed, at a bare minimum, regarding [his] involvement in the conspiracy with these two now discharged defendants. Finally, in the defense's opinion, the government has not been forthcoming about the reasons for the 11th hour discharge of these two codefendants after five years of prosecution against them.
>
> Regarding the second *Strickler* prong, on August 4, 2023, defense counsel reached out to the government requesting production of the grand jury transcripts and the government declined to produce said transcripts.
>
> For the final *Strickler* prong, prejudice will result from the nondisclosure because all defendants are entitled to the exculpatory evidence against them pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Additionally, it's a violation of [his] due process rights that he currently stands indicted on a conspiracy charge when the facts presented to the grand jury on that conspiracy charge have been significantly and substantially changed.

Def.'s Proposed Mot. for Release of Grand Jury Transcripts 2 (Doc. 558-2).

This argument by Defendant Taba amounts to nothing more than a fishing expedition based on conjecture and unsupported speculation that are insufficient to show a "particularized need" under any of the three *Douglas Oil* elements. His proposed motion also fails to address specifically

each of the three *Douglas Oil* elements as they pertain to this case and explain why they are met here.

### A. Disclosure is Not Necessary to Avoid a Possible Injustice

Defendant Taba has not shown that the grand jury transcripts are needed to avoid a possible injustice. He correctly notes that the charge against former Defendants Leyla Nourian and Ashraf Mofid were dismissed by the Government shortly before the first trial commenced in October 2022. As he notes, the Superseding Indictment alleges that he was recruited by Leyla Nourian. The court, however, disagrees that her dismissal from this case or the dismissal of Ashraf Mofid undermines the charges against him, as the Superseding Indictment contains a number of specific allegations regarding his role and participation in the alleged health care fraud conspiracy that are independent of and unrelated to Leyla Nourian's earlier recruitment of him. It is also clear from the Superseding Indictment that Defendant Taba's guilt or innocence for the conspiracy charge does not turn solely on whether he was recruited to participate in the conspiracy by Leyla Nourian. Additionally, although Defendant Taba asserts that the discovery produced by the Government contains no financial documents evidencing his receipt of kickback payments for his participation, the parties' pretrial filings in this case indicate that the Government intends to present evidence that cash payments were made to Defendants to avoid detection such that no financial records exist for these payments.

In any event, Defendant Taba's unsubstantiated suspicion that that the grand jury transcripts *might* contain information of an unspecified nature that could possibly provide a basis for dismissing the charges against him is far too speculative and not sufficiently particularized. *Shields*, 389 F.3d at 147-48 (concluding that the plaintiff failed to show "a particularized need for compelling the disclosure of grand jury information" because he had "not . . . put forward any

evidence whatsoever showing that [a deputy] and [assistant district attorney] withheld information from the grand jury" and "presented no evidence that would justify a fishing expedition into the proceedings of the grand jury"); *Miramontez*, 995 F.2d at 59 (determining that the defendant failed to demonstrate a "'particularized need' under any of the three elements set forth in *Douglas Oil*" because "[h]is petition [was] wholly general and [did] not request any specific portion of the proceedings for disclosure," and he described "errors or defects in grand jury proceedings, such as perjury," but he did "not . . . assert that any of these errors or defects occurred in his own grand jury proceeding, nor . . . hint at any evidence in the grand jury materials that might reveal the presence of such an error or defect."); *United States v. Tucker*, 526 F.2d 279, 282 (5th Cir. 1976) ("A defendant must show 'particularized need' to justify infringement of the secrecy surrounding a grand jury. Appellants' unsubstantiated assertions of improprieties before the grand jury do not approach such a showing.") (citations omitted)). Thus, without more, Defendant Taba's suspicions regarding the Government's decision to dismiss the charges against former Defendants Leyla Nourian and Ashraf Mofid and the effect and timing of that decision in 2022 do not suffice.

### B. The Need for Disclosure is Not Greater than the Need for Continued Secrecy

As noted, Defendant Taba's proposed motion does not address this or the other *Douglas Oil* elements. The Supreme Court in *Douglas Oil* explained that courts must consider the effects of disclosure on grand juries in a particular case, as well as future grand juries because: "[p]ersons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties." *Douglas Oil*, 441 U.S. at 222. Taking this into account, the court determines that the need for disclosure is not greater here than the need for continued secrecy, particularly in light of the court's determination

that Defendant Taba has not met his burden of establishing that disclosure is necessary in this case to avoid a possible injustice. Further, any generic nominal need urged by him does not outweigh the harm disclosure could have on future grand jury proceedings.

### C.  The Request is Not Structured to Cover Only Material Needed

As already explained, requests for grand jury transcripts must be specific and "structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222 (footnote and citations omitted). Defendant Taba's request, on the other hand, is not specific or structured to cover only material needed by him. Instead, his proposed motion includes a blanket request to disclose the entire transcript of the grand jury proceedings in the remote hope of uncovering a *Brady* violation or other unspecified information that might support a motion to dismiss the charges against him. Such a general request does not qualify as the kind of particularized request required for the disclosure of otherwise secret grand jury information. *See Miramontez*, 995 F.2d at 59.

Accordingly, even if the court allowed Defendant Taba to file his proposed motion to obtain the grand jury transcripts, it would deny the motion because he has failed to establish each of the requirements for such relief as required by *Douglas Oil.*

## II.   Motion for Leave to File Motion to Suppress (Doc. 557)

Defendant Taba seeks leave to file a motion to suppress statements he made to federal agents seven years ago on May 12, 2016, when they visited him at his office. Defendant Taba asserts that, during an interview with agents that lasted thirty minutes, he "never lied or made any false statement in that interview," but his "increasing concern for his patient [who was awaiting surgery and under general anesthesia] made him to be less clear or inartful in what he stated and some of his answers can give the wrong impression." Def.'s Mot. for Leave 4 (Doc. 557). He contends that good cause exists to file his proposed motion to suppress because of his decision to

retain new counsel in May of this year. In addition, he contends that "prejudice to [him] stems from three aspects intrinsic to this motion," including: "1) the agents' lack of experience in the medical field; 2) [his] increasing distress at how long his patient was sedated; and 3) [the agents'] mendacity regarding the purpose of their visit deprived [him] of his right to make an informed, intelligent, and voluntary decision about whether to speak to law enforcement agents." *Id.* at 3.

As Defendant Taba acknowledges, the motion deadline in this case expired more than two years ago. Defendant Taba and his new attorneys were aware of this when Defendant Taba retained them in May 2023. The court is not convinced that Defendant Taba's decision to retain new counsel again, three months before the September 11, 2023 trial setting, which was set in December 2022 (Doc. 515), qualifies as good cause or an exceptional circumstance beyond his control. Moreover, this is not a situation in which Defendant Taba himself was unaware of the evidence that he now seeks to suppress more than six years after the charges against him were brought. Thus, this is a motion to suppress that any of his numerous former attorneys could have filed on his behalf long before now. If the court resurrected previously expired motion deadlines every time a defendant (or the Government) retained new counsel, the trial of this case would never take place.

Defendant Taba has also failed to explain how he would be prejudiced if his Motion for Leave was denied, and he was not allowed to file his proposed motion to suppress. It is not even clear from his Motion for Leave or proposed motion to suppress which statement or statements he seeks to suppress. Thus, the court has no way of evaluating what, if any, prejudice might result if the statements are not suppressed.

### III. Motion for Leave to File Unopposed Motion to Extend Pretrial Materials Deadlines (Doc. 583)

The court's reasons for denying Defendant Taba's Motion for Leave to file an unopposed motion to continue all pretrial material deadlines are essentially the same as the reasons the court denied his subsequent Motion for Reconsideration (Doc. 585) on August 21, 2023. *See* Doc. 587. Thus, the court's reasons for denying this Motion for Leave require no further elaboration. After the parties filed their objections to exhibits and witnesses on August 21, 2023, however, it became clear that Defendant Taba had not complied with the August 14, 2023 deadline in the Amended Scheduling Order for exchanging exhibits.

According to the objections filed by other Defendants and the Government, Defendant Taba failed to exchange copies of many of his exhibits by this date, and copies of these missing exhibits still had not been provided as of August 21, 2023, the deadline for filing objections to exhibits. Additionally, the copies of exhibits that were exchanged were apparently mislabeled, making it difficult if not impossible for the other Defendants and the Government to file objections to Defendant Taba's exhibits. The court also notes that it has yet to receive copies of any of Defendant Taba's exhibits, although the pretrial conference is scheduled for September 7, 2023. It is unclear how Defendant Taba expects the court to assess the validity of and rule on any objections asserted by the parties to his exhibits if he has not provided copies of the exhibits to the court as ordered.

From this, it appears that Defendant Taba has effectively overruled the court, granted himself a continuance despite the court's prior rulings and admonitions, and told the court to "go jump in the lake!" To avoid additional delays that could further disrupt or delay the trial of this case, the court **directs** Defendant Taba to provide copies of all of his correctly labeled exhibits to the Government, his trial Codefendants, and the court by **12 p.m., September 11, 2023**. By

**September 18, 2023**, Defendants Jamshid Noryian, Deshid Nourian, Defendant Rydberg, and the Government may file objections to Defendant Taba's exhibits.  *To avoid confusion, if incomplete objections to any of Defendant Taba's exhibits were previously filed, amended objections that replace rather than supplement the prior objections must be filed.  If Defendant Taba fails to comply with this order, appropriate sanctions will be imposed.*

    **It is so ordered** this 7th day of September, 2023.

Sam A. Lindsay
United States District Judge