IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | Criminal Case **3:17-CR-155-L** |
| | § | |
| **MICHAEL TABA (07)** | § | |

# ORDER

On July 8, 2024, Defendant Michael Taba filed a Motion for Leave to File Pleading Asserting Sixth Amendment Violations in Excess Pages ("Motion" or "Motion for Leave") (Doc. 863) in which he seeks leave to file his proposed Motion for New Trial. The Government filed a response in opposition to this Motion for Leave on July 13, 2024. On July 15, 2024, Defendant Taba filed another Motion for Leave (Doc. 868) requesting permission to file a reply brief. The court **denies** both Motions for Leave (Docs. 863, 868) for the reasons herein explained.

## I.   Motion for Leave to File Another Posttrial Motion (Doc. 863)

Defendant Taba requests leave to file the proposed Motion for New Trial attached to his Motion for Leave for purposes of addressing alleged ethical violations affecting his defense because of his decision to hire a consulting firm, Physicians Against Abuse, to oversee his defense:

> Dr. Taba is the unwitting victim of Christina Black, president of Physicians Against Abuse, who solicited him to conduct his defense, extracted more than $600,000 in fees in from him, engaged in the unauthorized practice of law, hired and fired his attorneys at whim, interfered with his relationships with those attorneys by refusing to pay them and manipulating their access to information, and campaigned against them to Dr. Taba privately. Ms. Black also created fraudulent invoices and presented them to Dr. Taba for payment.
>
> Much of the legal work performed on behalf of Dr. Taba was not done by a licensed attorney, and his attorneys labored under a conflict of interest that prejudiced his defense and interfered with his right to conflict-free counsel, and to counsel of his choice. Undersigned counsel has an obligation under the Texas Disciplinary Rules of Professional Conduct, Rule 8.03, to report professional misconduct and contemporaneous with the filing of this motion, has provided a

copy to the Texas Unauthorized Practice of Law Committee and to the Chief Disciplinary Counsel in the Dallas Regional Office.

Mot. 1.

The proposed Motion for New Trial on Sixth Amendment Violations that Defendant Taba seeks to file is 52-pages in length. The exhibits filed in support of the proposed Motion for New Trial total approximately 550 pages and include, among other things, communications between Defendant Taba and his defense team; communications among members of his defense team; and declarations from some of his current and former attorneys. In addition, Defendant Taba retained Renee Knake Jefferson, the Doherty Chair in Legal Ethics and a Professor of Law at the University of Houston Law Center, "to render opinions concerning questions of legal ethics." Ex. AA to proposed Motion for New Trial (Doc. 863-29). Ms. Jefferson submitted a 22-page expert report in which she opines that: (1) "Ms. Black engaged in the unauthorized practice of law [that] was facilitated, in part, by Mr. [Stephen] Wells"; and (2) "Ms. Black interfered in lawyer-client relationships between Dr. Taba and his lawyers which created divided loyalties and conflicts of interest." *Id.* The proposed Motion for New Trial would be in addition to the 30-page "Motion for a Judgment of Acquittal (R. 29) and Motion for New Trial (R. 33)" that Defendant Taba filed on July 8, 2024 (Doc. 860), with leave of court.

Defendant Taba asserts that, despite being put on notice of the gravity of the alleged ethical and criminal violations concerning his defense, the Government opposes his Motion for Leave and has taken the position that he should be required to comply with the court's order (Doc. 736) requiring him, David Nourian, and Christopher Rydberg ("Defendants") to file one amended posttrial brief of 40 pages or less that includes all arguments under Federal Rules of Criminal Procedure 29 and 33 that they wish the court to consider. Defendant Taba, however, argues that

the "gravity and complexity of the facts giving rise to these violations warrant a brief exceeding" Local Criminal Rule 42.7's 25-page limit and that his:

> counsel has endeavored to summarize in the brief the exhibits attached to the pleading to cover only the most critical (but not all) of the communications and pleadings that provide the basis for the violations. Professor Renee Knake Jefferson's expert report addresses the ethical misconduct, but the supporting brief must address how these violations prejudiced Dr. Taba. Extra pages are necessary to adequately brief the issues, and care is made not to belabor any point.

Mot. 2.

Defendant Taba asserts that arguments not adequately briefed are forfeited, and defense counsel has an ethical duty under the American Bar Association's standards for criminal defense to preserve a defendant's claims. He further asserts that limiting him to a single 40-page brief would require him to forfeit some of the insufficient evidence arguments included in his already filed "Motion for a Judgment of Acquittal (R. 29) and Motion for New Trial (R. 33), which would violate his right to due process under the Fifth Amendment. He argues that he should not have to forfeit these argues in order to assert the arguments in his proposed Motion for New Trial pertaining to his Six Amendment right to effective assistance of counsel and conflict-free counsel that he seeks leave to file. He, therefore, contends that a second brief the length of his proposed Motion for New Trial is "necessary for these unusual claims to be presented and preserved." Mot. 2.

As a preliminary matter, the Government takes issue with the way in which the Motion for Leave and proposed Motion for New Trial were brought to its attention. It contends that the first time Defendant Taba's counsel reached out to it to confer regarding the Motion for Leave and request to file a second posttrial motion was July 8, 2024, a few hours before the Motion for Leave was filed; that the Government asked to see the proposed Motion for New Trial to conduct a meaningful evaluation of the reasonableness of the Motion for Leave, but it was not allowed to see

Order – Page 3

the proposed motion before it was filed. The Government asserts that it was for this reason that it only previously opposed the Motion for Leave to file a second posttrial brief on the ground that it was inconsistent with the court's briefing order. The Government, thus, asserts that the proposed voluminous Motion for New Trial and exhibits were not disclosed to it until after they were filed when the Government saw them for the first time. Now after having seen the proposed Motion for New Trial and exhibits, the Government offers additional reasons why it believes that the Motion for Leave should be denied.

First, the Government acknowledges that a defendant may raise ineffective assistance of counsel claims in a motion for new trial. Gov't Resp. 2 (quoting *United States v. Bishop*, 629 F.3d 462, 469 (5th Cir. 2010)). The Government contends, however, that "the United States Supreme Court has emphasized that a § 2255 motion is the preferred method for raising a claim of ineffective assistance of counsel." Gov't Resp. 2 (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). According to the Government, the reasoning behind this preference is that:

> In a § 2255 proceeding, the trial court has the ability to fully develop the record regarding claims of ineffective assistance of counsel, including considering issues separate from the trial itself, by holding evidentiary hearings and taking testimony from witnesses, including counsel alleged to have rendered the deficient performance. *Massaro*, 538 U.S. at 505-06. "Because a crucial element of a fair trial is absent when defense counsel is constitutionally ineffective, the preferred device for raising an ineffective assistance claim is a federal habeas petition." *United States v. Medina*, 118 F.3d 371, 373 (5th Cir. 1997). "That mechanism, rather than a new trial, seems best to accommodate the interests in finality and fairness with respect to ineffective assistance of counsel claims." *United States v. Ugalde*, 861 F.2d 802, 809 (5th Cir. 1988). In *Ugalde*, the Fifth Circuit explained that new trial motions based on newly discovered evidence "are disfavored by the courts" and are granted only if the defendant can pass an "unusually stringent substantive test." *Id.* at 808 (citations omitted). "Such motions are most appropriate when the newly discovered evidence 'goes directly to proof of guilt or innocence.'" *Medina*, 118 F.3d at 373 (quoting *Ugalde*, 861 F.2d at 808-09).

Gov't Resp. 2-3.

The Government contends that Defendant Taba's alleged Sixth Amendment violations to his right to effective assistance of counsel and conflict-free counsel are premised on "purportedly newly discovered ethical violations by attorneys (including his current counsel) and consultants [that] he hired and consistently communicated with before and throughout trial." *Id.* at 2. According to the Government, these arguments amount to nothing more than "post-verdict buyer's remorse over attorneys and consultants [Defendant Taba] hired and granted authority regarding the conduct of his defense," including "the decision to hire a consulting group, Physicians Against Abuse, hire and fire a revolving door of attorneys over the past several years, and other matters of trial strategy" such as "the strategy of how to conduct . . . witness examinations and present evidence." *Id.* (citing Doc. 863-2). The Government further contends that matters concerning "conscious and informed decision[s] on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Gov't Resp. 3 (quoting *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008)). The Government argues that "[j]udicial scrutiny of counsel's performance must be highly deferential" such that "every effort [must] be made to eliminate the distorting effects of hindsight." Gov't Resp. 3-4 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). The Government asserts that courts must, therefore, "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Gov't Resp. 4 (quoting *Strickland*, 466 U.S. at 689).

For the reasons below, the Government asserts that Defendant Taba has not shown good cause for why his Motion for Leave should be granted when doing so would require the court to consider his allegations at this time rather than during the normal § 2255 process:

> First, investigation and litigation of these allegations in the context of a Rule 33 motion would require obtaining sworn statements from other members of

> [Defendant] Taba's defense team, potentially an evidentiary hearing where witnesses would be called, and developing the record further. Effectively, the [c]ourt would be required to hold a mini-trial on these matters prior to [Defendant] Taba even being sentenced. Second, [Defendant] Taba's motion raises issues of alleged ineffective assistance of counsel that are separate from whether the Rule 33 standard for a new trial is met. Specifically, whether a representative for Physicians Against Abuse, Christina Black, practiced law without a license is a separate question from whether [Defendant] Taba received ineffective assistance of counsel from the attorneys he hired and who were the only ones trying the case in the courtroom. The [c]ourt should reject [Defendant] Taba's attempt to litigate that allegation against Ms. Black in the context of a Rule 33 motion, which is limited to whether Taba received a trial that was not fundamentally unfair. *See Medina*, 118 F.3d at 373 ("We emphasize finality in the context of Rule 33 because of our confidence that, whatever facts were unknown at the time of trial, the trial itself was not fundamentally unfair."). Instead, as in *Medina*, [Defendant] Taba may more appropriately and effectively bring these claims in a § 2255 motion and proceeding, as is the preferred method for raising such claims. *See Massaro*, 538 U.S. at 504.

Gov't Resp. 4-5 (footnotes omitted).

Without commenting on the merits of any grounds urged by Defendant Taba for a new trial, the Government also expresses the following additional concern regarding a potential conflict of interest:

> The [G]overnment is concerned that the [proposed Motion for New Trial] has created a conflict of interest between [Defendant] Taba and at least two of [his] current counsel, Brady Wyatt and Robert M. Castle III. [Defendant] Taba makes allegations about the effectiveness of the trial team, which included Mr. Wyatt and Mr. Castle. Neither has withdrawn from their presentation of [Defendant] Taba. Further, the [proposed Motion for New Trial] includes a declaration from each of Mr. Wyatt and Mr. Castle and involves events to which one or both of the attorneys appear to have been a witness. This appears to create further conflict, as each would likely be a witness in any future hearing, and their effectiveness as counsel would be at issue during such a hearing. (*See* Dkt. 863-24, Declaration of Brady Wyatt; Dkt. 863-26, Declaration of Robert M. Castle III; Dkt. 863-2 at 19, 21-26, 34, 41, 55.) As a result, their personal interests may be contrary to those of their current client.

Gov't Resp. 4 n.1. The Government, therefore, contends that the court should deny the Motion for Leave.

Alternatively, if the court grants the Motion for Leave in part or full, the Government requests:

> additional time to respond to the [proposed Motion for New Trial] and likely will request an evidentiary hearing to respond to the allegations contained in the proposed motion. The [G]overnment will need to request such an extension of time because, before [it] can file a brief responding to the ineffective assistance of counsel claims, it will need to seek an order from the [c]ourt directing additional members of [Defendant] Taba's trial team to file affidavits, seek clarity from the [c]ourt as to the extent of [Defendant] Taba's waiver of attorney-client and work-product privileges (especially in light of the fact that litigation in this [c]ourt and on direct appeal is not complete), likely request a ruling from the [c]ourt regarding potential conflicts of [Defendant] Taba's current counsel, and conduct its own factual investigation of [Defendant] Taba's allegations.

*Id.* at 5-6.

The court shares many of the same concerns with the Motion for Leave and proposed Motion for New Trial as expressed by the Government. Additionally, after reviewing the proposed Motion for New Trial and supporting evidence, the court is not convinced that they are sufficient to establish the requisite prejudice that Defendant Taba acknowledges he must demonstrate to prevail on the grounds asserted. By way of example only and without going into great detail, some of the court's reasoning and observations in this regard are as follows:

1. A number of the arguments and material assertions in the proposed Motion for New Trial are not supported by Defendant Taba's citations to evidence, and some attorney declarations contain equivocating statements such as "to the best of my knowledge."

2. Matters pertaining to the first trial are irrelevant.

3. Although the court determined that initial expert designations allegedly prepared by Ms. Black and filed by Mr. Wells did not comply with its prior order and directive regarding expert designations, Mr. Wells was given an opportunity to prepare and file supplemental expert designations on Defendant Taba's behalf and did so.

4. While Ms. Jefferson opines that "Ms. Black engaged in the unauthorized practice of law [that] was facilitated, in part, by Mr. Wells," and "Ms. Black interfered in lawyer-client relationships between Dr. Taba and his lawyers which created divided loyalties and conflicts of interest," she does not express the opinion that Defendant Taba was prejudiced or received a fundamentally unfair trial as a result.

5. The evidence against Defendant Taba at trial was overwhelming such that matters regarding Ms. Black's alleged involvement and trial counsel's alleged performance deficiencies, involving, for example, allegedly missed opportunities to impeach or better cross-examine witnesses, do not satisfy *Strickland*'s prejudice prong. Even the reputable, experienced attorneys representing the other Defendants in the second trial had difficulty making much headway in their effort to impeach the Government's key witness, Codefendant Dr. Kevin Williams, who had previously pleaded guilty to the healthcare fraud charges against him. Dr. Williams readily admitted his involvement in the criminal activity, and the jury apparently found his testimony regarding other Defendants to be credible. Credibility determinations are made solely by the jury, not by counsel or the court. In other words, Defendant Taba's evidence does not establish that the alleged deficiencies affected the outcome of his trial or that he received an unfair trial.

6. Many of the matters alluded to in the proposed Motion for New Trial do not establish performance deficiencies, let alone prejudice. The court had the opportunity to interact with and observe all of Defendant Taba's attorneys throughout the proceedings in this case, and they all provided vigorous defenses on behalf of their client through the filing of motions, making oral arguments, and the presentation and cross-examination of witnesses. Even in the instances that Ms. Black allegedly inserted herself, Defendant Taba's evidence shows that his retained counsel had the opportunity to and did express their differing opinions regarding trial strategy and expert witnesses. Hindsight is always 20-20. Regardless, in the court's view, the most notable hurdle for the attorneys who represented Defendant Taba late in this case was not their lack of competency or Ms. Black's involvement but instead Defendant Taba's "**revolving door**" of attorneys. Defendant Taba had as many or more attorneys represent him than all of the Defendants combined. Each time a new attorney was allowed to substitute in for former counsel, his or her hands were tied by prior deadlines set by the court. Before substituting in, new counsel would acknowledge that they were aware of the existing deadlines and the court's orders in this regard, but they would nevertheless subsequently seek leave to revive prior deadlines that had long since expired in an improper attempt to obtain a "do over." The Government argued, and the court agreed, that, if it extended deadlines every time a defendant obtained new counsel, the case would never go to trial and would be repeatedly continued indefinitely. The court also determined that proceeding in this manner would prejudice the Government (justice delayed is justice denied) and unnecessarily interfere with the court's ability to manage its docket and the proceedings in the case. There was also a real concern about losing witnesses over time and witness memories fading. More importantly, there is no indication from the evidence submitted in support of the proposed Motion for New Trial that the decisions to hire and fire attorneys were not made knowingly and voluntarily by Defendant Taba, who unlike most criminal defendants who have previously appeared before the court, is a highly educated physician. Instead, the evidence suggests the contrary. Thus, that Ms. Black may have also proposed, recommended, suggested, cajoled, or even urged him to do so it quite beside the point.

Further, when Defendant Taba's current counsel filed other posttrial motions seeking various relief, including as recently as July 3, 2024, when leave was sought to exceed the page limit for Defendant Taba's "Motion for a Judgment of Acquittal (R. 29) and Motion for New Trial (R. 33)" (Doc. 860), there was *no mention or hint* of the possibility that counsel intended to file another motion for leave to file a *much lengthier* motion for new trial. Instead, counsel waited until after the court granted Defendant Taba's prior motion for leave before blindsiding it and the Government with his current Motion for Leave and a **500-plus-page** Motion for New Trial. He did so even though the court previously advised him and the other parties in recent orders regarding its concern about nonemergency matters (matters that cannot be reasonably anticipated) unnecessarily derailing and further delaying the sentencings in this already "old" case. While Defendant Taba's counsel has an ethical duty to preserve her client's claims, she also owes a duty of candor to the court. It is **obvious** from the voluminous nature of the proposed Motion for New Trial and exhibits, including the attorney declarations and expert report, that work on this motion and the supporting exhibits commenced *long* before counsel recently sought leave on July 3, 2024, to exceed the page limit for Defendant Taba's "Motion for a Judgment of Acquittal (R. 29) and Motion for New Trial (R. 33)."

The strategy of Defendant Taba throughout the proceedings in this case has always been to delay, delay, and delay; and this fact is amply demonstrated by the bevy of attorneys who have represented him in this case before and during the first and second trials. The posttrial motions filed by Defendant Taba's newly retained counsel have simply continued on the same theme of delay in an attempt to unnecessarily delay his sentencing. The court understands that Defendant Taba's new counsel was not retained until after the second trial; however, the ongoing goal of delay is readily apparent from new counsel's posttrial filings because the issues now claimed to be

egregious violations of Defendant Taba's constitutional right to a fair conflict-free trial were known to Defendant Taba and his prior counsel as early as the first trial or immediately after a mistrial was declared by the court in December 2022.

Notably, a handful of his current and former attorneys, including those involved in the first trial, filed declarations in support of the proposed Motion for New Trial, but neither they nor Defendant Taba's current counsel offers any explanation as to why these issues—and in particular the issue concerning Ms. Black's conduct and role as part of the defense team—could not have been raised before the second trial commenced. Given the delay in raising these alleged constitutional violations, the court can only conclude that none of this would have been an issue if Defendant Taba had been found not guilty of the healthcare fraud charges against him. It is only because the jury found him guilty that his new counsel, along with his prior attorneys, are attempting to second guess the defense's legal strategy and cast blame not only on Ms. Black but also certain trial counsel, both of which were knowingly and voluntarily hired and retained by Defendant Taba himself.

Moreover, the Motion for Leave gives the misimpression that the proposed Motion for New Trial is limited to the allegedly outrageous violations concerning Ms. Black's involvement in Defendant Taba's defense. It was only after reviewing the proposed Motion for New Trial that the court realized that it also raises a number of "run-of-the-mill" arguments regarding trial counsel's allegedly deficient performance. The court reasonably infers from the foregoing circumstances that counsel has not been candid and forthright with it. Accordingly, the Motion will be denied for all of the foregoing reasons.

**II.     Motion for Leave to File Reply Brief (Doc. 868)**

Defendant Taba also seeks leave to file a reply[*] in support of his original Motion for Leave to clarify that his proposed Motion for New Trial is not limited to ineffective assistance of counsel claims, but also focuses on his argument that he did not receive a fair trial because Ms. Black, a nonlawyer who is not authorized to practice law, acted as the "conductor" of his defense and prepared critical documents in this case, which Mr. Wells filed, thereby abdicating his role as trial counsel in connection with the second trial. According to Defendant Taba's proposed reply brief, this issue does not pertain to counsel's performance but instead whether the performance was that of counsel at all.  As already indicated, however, the evidence submitted in support of the proposed Motion for New Trial does not support the assertion that Mr. Wells or Defendant Taba's other trial counsel abdicated their role as counsel; nor does the evidence support the assertions in the original Motion for Leave and proposed Motion for New Trial that Defendant Taba was prejudiced as a result of Ms. Black's involvement or trial counsel's performance because he did not receive a fair trial or the outcome of the trial would have been different.

Defendant Taba's proposed reply also argues that "[d]ue process requires the opportunity to be heard at a meaningful time *and* a meaningful manner." Def.'s Proposed Reply 4 (Doc. 868-2) (citing *Mathews v. Eldridge*, 424 U.S. 319 1976)).  As previously noted, no explanation has been provided as to why the allegedly egregious conduct of Ms. Black that started early on in this case could not have been brought to the court's attention before the second trial commenced.  Thus, any delay in the resolution of this issue will not be due to court inaction but instead attributable to Defendant Taba's decision to wait until after the conclusion of his second trial to raise the issue for the first time.

---

[*] *See* L. Crim. R. 47.1. This Rule provides in pertinent part: "Reply briefs may not be filed unless the moving party requests, and the presiding judge grants, leave to do so."

Order – Page 11

In addition, the Motion for Leave to File a Reply (Doc. 868) does not include a certificate of conference as required by this district's Local Criminal Rules and simply reiterates previous arguments asserted in the original Motion for Leave. The Motion for Leave to File a Reply also confirms that the Government was not provided with a copy of Defendant Taba's proposed Motion for New Trial before it was filed.  *See* Doc. 868-2 at n.1.  Thus, none of Defendant Taba's justifications for requesting leave to file a reply are sufficient to establish that good cause exists for filing his proposed reply. The Motion for Leave to File a Reply (Doc. 868) will, therefore, be denied.

### III.     Conclusion

For all of these reasons, including those expressed in the Government's response, the court **denies** Defendant Taba's Motion for Leave to file his proposed Motion for New Trial (Doc. 863). The court also **denies** Defendant Taba's Motion for Leave (Doc. 868) to file a reply in support of his original Motion for Leave.

**It is so ordered** this 16th day of July, 2024.

Sam A. Lindsay
United States District Judge